Good morning, may it please the court. My name is George Morris with the law firm of Simpson Thatcher and Bartlett and I'm pro bono counsel for the appellant Mr. Rogelio Rangel. I would like to reserve two minutes for rebuttal I'm here today because the lower court committed various procedural errors and incorrectly entered summary judgment against. Mr Rangel thereby denying him a fair and just opportunity to have his day in court. I Will be addressing four points for why this court should reverse the summary judgment order and remand to the district court The first point is that the magistrate judge erred by dismissing dr. Nabil Anathasis from mr. Rangel's case without justification Without explanation and without giving mr. Rangel the opportunity to address this dismissal The second point is the magistrate judge abused his discretion by failing to appoint counsel for mr Rangel when mr. Rangel's case clearly has merit and exceptional circumstances existed Warranting the appointment of counsel. The third point is that the summary judgment order should be reversed and remanded Because mr. Rangel did not receive the fair notice of his obligations to oppose a motion for summary judgment as mandated by ran v. Roland Because the notice given to mr. Rangel was buried in the service order three years prior to Mr. Excuse me. Dr. Made his motion for summary judgment and it was not in a language that mr Rangel could understand The last point is the summary judgment should be reversed and remanded because dr Made to fail to meet his burden to show that not a single genuine issue of material fact Existed as to his deliberate indifference to mr. Rangel's serious medical needs and because mr Rangel's supporting documents and pleadings itself show that there is There are several genuine issues of material fact Making summary judgment for dr. Made a improper As to the first point of the improper dismissal of dr. Nabil and a fascist There is no there was simply no justification for dr. Nabil and if it and fascist to be Dismissed from this case. He was a doctor that diagnosed. Mr. Rangel with prostate cancer in August of 2001 and He was a doctor who shared responsibility with dr. Mehta for subsequent treatment treatment of mr. Rangel's condition The allegations against Confusion about Nabil versus dr. A. I mean, why did he get dismissed? Well, that is a good question and it was out. There's nothing said about it There's absolutely no explanation from the magistrate judge for why he was dropped none whatsoever I thought maybe it was simply because there was Some confusion about who was who because his name is Nabil and then his last name is anathasis. So they sometimes call him. Dr. A and they call him that Nabil But he's the same person. He is the same person and I believe that mr. Rangel's Complaints and his habeas petition makes that absolutely clear a review of the record makes that absolutely clear and it is Disingenuous at best to say that there is no doctor and he's the urologist He is the urologist and he is the doctor who diagnosed. Mr. Rangel with prostate cancer in August 2001 Could I ask one other question sure Does he have cancer or not or does nobody know at this point based on their record I think based on the wreck well based on the record the only solid piece of evidence is on excerpt of the record page 206 in which That is dr. Anathasis's 2001 diagnosis of prostate cancer There is no supporting evidence that contradicts that claim While there may be arguments and doctors notes That it is unclear whether or not this is the the only clear Indication that mr. Rangel does in fact have prostate cancer in the record So getting back to you the the improper dismissal of dr. Nabil Anathasis suit to further your point your honor there. There's just even if there was some confusion Dismissal would have been improper In in the 9th circuit. It is clear that leave to amend especially for a pro se Lydian should be granted and Only if there was no possible way that amendment could cure the defect in the complaint Should it should there be dismissal? Clearly all that would needed to be done here is for doctor or excuse me for mr. Rangel to add dr. Anathasis's last name to the complaint or to the caption Therefore because dr. Anathasis was improperly dismissed from Mr. Rangel's case that warrants reversal of the summary judgment order and remand to the district court The improper dismissal of dr. Nabil Anathasis was just the beginning of the procedural problems that mr. Rangel faced The magistrate judge in this case abuses discretion by failing to appoint counsel from mr. Rangel Mr. Rangel made a request for counsel nine times in this case and every time His petition was denied and every time the magistrate judge failed to articulate reasons For why? Mr. Rangel should not have counsel now that in and of itself is cause for remand Because without any explanation for why the appointment of counsel was denied there could be no meaningful appellate review Had the magistrate judge properly analyze the exceptional circumstances in this case, it would have been clear that mr. Rangel Situation warrants the appointment of counsel. There's the two-part test and that's the likelihood of success on the merits and the Pro se litigants ability to articulate his claims now As to the first part likelihood of success on the merits that really goes to whether or not This a lawyer Taking these the facts and the allegations Would be helpful in in moving this case forward. I think that on the face of the record It is clear that mr Rangel's claims have merit and Having counsel appointed would only bolster that and would only make that it would only be able to make the likelihood of success on the merits Better and as to mr. Rangel's ability to articulate his claims Well as he as he mentioned several times in his petitions for counsel Clearly he had trouble Navigating his way through the litigation process and that's because first he's suffering from the effects of prostate cancer Mr. Rangel is almost completely deaf. He's 85 years old. He has little education no legal training and barely reads writer speaks English a With the fact that this case involves medical evidence and and and it is clear that mr. Rangel needed the assistance of counsel to Truly articulate his claims and bring his case forward Now because the Because the magistrate judge did not give any reasons whatsoever. It is not clear for why a council was not appointed Because of that and because of the fact that exceptional circumstances do exist This court should reverse the summary judgment order and remand to the district court Mr. Rangel also did not receive the proper notice that is required by Randy Roland The Notice that he received was berries and buried in the service order three years before the filing of the summary judgment Receiving notice three years before what's the procedure that has to be done in these hundreds of prisoner cases in your view? well, I believe that in order to really comport with Rand to to To really educate the pro se litigant of the technical requirements for fate for opposing summary judgment It has to be contemporaneous with the filing of the motion whether it's you know at the same time or shortly thereafter It has to be contemporaneous. What's your is does that you derive that from Rand? I believe that a fair reading of Rand will show that that It does in fact You also say it has to be in his language I believe that in order for a Rand notice to truly be effective. It has to be understandable That's the heart of Rand if it's not I'm just trying to get your point and the federal courts would be required To figure out the person's Native language and issue the note Rand notice in that language. Is that your position? Well, I think that No, tell me yes or no Is that your my position is that a pro se litigant who does not speak or read write English? Well that yes must receive notice in the language that he can understand. That's the only way that that brand will truly be This this both the spirit and the and the and the law of Rand supposedly do wrong In in general or it was well as opposed to say, dr. Mabel, well, I believe that dr. Meta who was he was the gatekeeper of mr. Rangel's health. He was mr Rangel's only outlet to receiving the medical attention that he that he needed When mr. Rangel came to him and complained of pain With dr. Meta being aware that he was diagnosed with prostate cancer in 2001 and with mr Rangel specifically telling dr. Meta I'm here because I need treatment for prostate cancer What dr. Meta did as evidenced by his own affidavit? was say I'm not a cancer specialist. I can't help you anymore. He washed his hands of dr. Mr. Rangel and and that is Deliberate indifference knowing that a patient comes to you with the problem that needs to be addressed and simply saying there's nothing more I can do for you You know don't ask for subsequent treatment for me that's deliberate indifference, all right, your time is expired You Good morning. My name is Kevin Rager I'm with the Office of the Attorney General and I am presenting argument on behalf of the appellee. Dr. Deepak meta To touch on the points raised by counsel first and foremost is this is a case against dr Meta and we heard in the last 30 seconds some accusations against dr. Meta Allegedly blowing off. Mr. Rangel and refusing to provide him treatment that could not be further from the truth The first time dr. Meta was asked to even examine Mr. Rangel with regard to his prostate condition was on May 22nd of 2001 on that date dr. Meta did testing Noted the results of having a high elevated PSA level which isn't it which he says is indicative of BPH cancer Paget's disease or some other her Potentially serious medical condition and so he immediately referred Mr. Rangel to experts in that area He referred him to a urologist and referred him to an oncologist in addition to that He gave him medication terazine to treat the prostate condition now Dr. Meta as he states in this declaration is a general family type practitioner He is not a specialist in urology or oncology So he did not wash his hands of mr. Rangel He referred him to the appropriate experts just as your doctors would do if you went in to see them He is a gatekeeper and that's his function. And so as his treatment progressed now, dr Meta also Mr. Rangel has a variety of health conditions that are problematic He has this prostate condition, but as is noted in the record, he also has a significant heart defect And dr. Meta was providing him treatment for that heart defect And as noted in the record in the discharge In the discharge report that was written by dr. Meta on August 17th of 2001 This is after dr. At the Nash's had done the test which preliminarily came back positive for cancer In the discharge report again, he's being discharged because he had heart surgery and that's what dr Meta had him in the hospital for he notes again the elevated PSA levels notes again the potential for Paget's disease or some other serious medical condition and again Notes that he's been referred and he's under the care and treatment of specialists for that condition now It's not just dr. Meta and dr. At the Nash's who participated in The care and treatment that was provided to mr. Rangel. He was also examined by dr Bunnell at Queen of the Valley Hospital, so they sent him to an outside institution. He was evaluated by dr. Richman Another outside specialist He was even referred to UC San Francisco Medical Center for further treatment and all of them Concluded that he does not have cancer He has BPH and enlarged prostate and Paget's disease Now whether or not he has cancer versus one of those other serious medical conditions is really a red herring because in deliberate indifference cases a Difference amongst doctors opinions and what one condition is versus another is insufficient to raise a viable claim Hasn't he also been told? At least in one doctor's view that he needs to have a biopsy before they would actually do any kind of surgery, but he declined that biopsy That's absolutely correct He declined biopsies the cytoscopy on at least three different occasions when it was offered by UC San Francisco he refused to have it when it was offered by dr. At the Nash's early on he referred refused to have it He refused to let dr. Bunnell at Queen of the Valley do it So he was offered these things many many times And whether it was because he didn't understand his condition And really what he was saying because when he did his 602 appeal it was reviewed by dr. Andresen the chief medical officer at CMF who actually interviewed dr. Rangel with an interpreter Counselor you just not have a dog in that fight. Oh, I do have a view on it your honor and with regard to pro bono counsel being appointed It is no secret to this court that the Eastern District handles more inmate Pro se cases than any court in the country by far Their current case levels I've been told by the judges is anywhere from five to six hundred inmates apiece They are clogging the courts so badly That to assign appellate count or to assign pro bono counsel in those cases is impossible Now with regard to the right to counsel at issue in this case The right to counsel or the ability to appoint counsel is only appropriate in exceptional circumstances Now in this case Contrary to what counsel has argued the court did make findings on the very first motion that plaintiff made for appointment of counsel And it's a page in the excerpts of record. It's a page 198 and 199 The court found that plaintiff did have some reasonable likelihood of prevailing But citing to wood versus house, right? Stated that there was nothing exceptional about this inmates claim versus the problems faced by other inmates in pro se cases about something exceptional about this particular inmate given his age and deafness and Ability to actually present the claim that he might have a likelihood of prevailing on your honor with regard to Well, and let me just preface this by saying there was a second motion brought where the court went into more detail and so the extended detail You can find in the excerpts of record at pages 121 and 122 Now where the court analyzes that a little better But what the court did find is that he was able to articulate his claims And I think that if you look at the record you'll find that this inmate Articulated his claims far better than almost every inmate I've seen in the years that I've been handling these cases For example, if you look at the excerpts of record at page 26, and this is all just coming from his complaint He alleges specifically a denial of due process. He cites to section 1983 he alleges that he exhausted his administrative remedy citing to booth versus Turner and the requirements of that at page 29 that he makes a request for injunctive relief where he cites to the relevant provisions of the California Code of Regulations on prison standards governing inmates At page 30 he cites to the patient Bill of Rights and numerous cases including wood versus house right and McGuckin versus Smith and Relevant cases on deliberate indifference and explains the standards for those at page 31 and 32 He cites the standards and cases for the handling of 12 v6 motions to dismiss and requests that his pleading be liberally construed consistent with the cases that he cites at page 42 He cites his qualifications and experience in the United States all the training that he's had in business and banking and finance and real estate And running his own company here in the United States Saying that he's been a resident here for 30 years so And if you also take a look at page 46 of the supplemental excerpts It's got a copy of his government tort claim So he even knew enough to file a tort claims act claim with the state of California Now in his 90 pages of complaint, all of it is handwritten in English It's readily understandable. It contains relevant Authorities it clearly states his claim. He was very easily able to articulate his claim So the court found that there's nothing exceptional about the law On deliberate indifference, it's well established and there's certainly nothing Exceptional about this inmates ability to prosecute his claim What about the? problem with dr. Nabil a Who seemed to have fallen out even though there's a claim made against him in The complaint well my reading of it your honor the first time I read through the complaint I did not see a claim against dr. Athanasius And I suspect that the court didn't either because dr. Athanasius is not named anywhere in that 90 pages of articulately written Clear handwriting. He's not named in there any place now Whether it's a confusion as to his name I would say probably not because the inmates submitted typewritten documents clearly identifying dr. Athanasius, so there couldn't be any confusion about who was doctor was It seems to me. There's a potential claim against him if you read what happened and You've articulated what dr. Meda did he refers this out to these other people and we don't know because we don't really have a So-called rebuttal from them as to you know, whether we might just have a difference of opinion or what happened So we don't really have dr. No, I'll call him. Dr. Neville for lack of pronouncing his last name, but that's how he's referred So, you know, he's kind of referred to as dr. Neville, but clearly it's dr. Athanasius that's being referred to in the papers. Well, I think it's clear now seven years later Counsel is arguing for the first time that that's who this inmate meant Okay, the inmate was given not only in the initial order did it come out as approving a claim Stating a claim against dr. Meda, but he also had three years to conduct discovery To read through his documents to make a motion to amend the complaint to add the claim and he never did Even when he was presented with the motion for summary judgment, and he did an opposition to it He never requested leave to amend the complaint to add any other defendants or declare it clarify Any misconception about who the potential defendants were so in the absence of him? identifying the proper defendant in the initial complaint and After failing for three years to move to amend the complaint and then not raising it in opposition to the MSJ What else can the district court possibly do? Thank you, your honors. Thank you You exceeded your time, but we'll give you a minute for rebuttal Thank you, your honor Just going on the point to if you are looking at all of mr. Wrangel's pleadings to say that it has been it is well articulated citing case law does not make You an articulate anybody can write down a string of case law you have to look at the the pleadings and It's interesting that dr. Meda himself attacks Mr. Wrangel's ability to articulate his claims by claiming on summary judgment that all he did is follow one page Objection and haphazardly submitted documents to the court and cited no legal or factual authority clearly Dr. Meda believes that mr. Wrangel is not able to really put forth this case and that actually is true and that is because a he was not given sufficient Rand notice to understand what he needed to do and be because he needed counsel the other point too is that it's It's not leave to To amend the complaint that that has to be mr. Wrangel had to be aware of the fact that he was dismissed in the first Place, mr. Wrangel can't act, you know over three years Counsel argued that he should have been able to amend as it complained He had all this time. He didn't even know and you can see his his subsequent pleadings continue to keep dr Nabil athanasis in the case because he had no idea there was no Indication to him that dr. At Nabil anathanasis has been dismissed from this case. Thank you Also want to thank counsel for participating in the pro bono program We find it very helpful and I actually think I'm sure the Attorney General does as well to have a well articulated pleading So we appreciate your participation and that of your firm Wrangel versus meta is submitted
judges: Noonan, McKeown, Archer